## CONTINUATION OF APPLICATION FOR SEARCH WARRANT

I, Special Agent Sara Choi, being sworn, depose and state as follows:

### INTRODUCTION

1.      I am participating in an investigation of Nicholas Edward HALLO for violations of 18 U.S.C. §§ 922(g)(1) [felon in possession of a firearm] and 922(o) [possession and transfer of a machinegun].

2.      Because this affidavit is being submitted for the limited purpose of establishing probable cause to search a specific location, I have not set forth each and every fact learned during the course of this investigation, nor described all aspects of the investigation. I make this affidavit based on my training and experience, personal knowledge derived from this investigation, and other sources, including but not limited to: (a) my discussions with other law enforcement personnel, including members of the Grand Rapids Police Department; (b) my review of reports and information submitted by other law enforcement personnel; and (c) my review of records checks and database queries from federal and local law enforcement agencies.

3.      For the reasons described herein, there is probable cause to believe that the black/silver Apple iPhone ("Target Device") obtained from HALLO during his arrest on December 15, 2022, as described in Attachment A, contains evidence of violations 18 U.S.C. §§ 922(g)(1) [felon in possession of a firearm] and 922(o) [possession and transfer of a machinegun], as described in Attachment B.

### AGENT BACKGROUND

4.      I have been employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") since March 2020. I completed twelve weeks of Criminal Investigative Training and fourteen weeks of Special Agent Basic Training. Prior to my employment with the ATF, I was a public safety officer with the Kalamazoo Department of Public Safety for approximately thirteen years (eleven years as a uniformed officer and two years as a Detective). My responsibilities include the investigation of criminal violations of Titles 18 and 21 of the United States Code.  I am currently assigned to the ATF Field Office in Grand Rapids, Michigan.

5.      I have participated in numerous investigations involving violations of federal firearms and narcotics laws. Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, I have become familiar with the methods used by traffickers to smuggle and safeguard narcotics, to distribute narcotics, to possess firearms in furtherance of safeguarding narcotics, and to collect and launder drug-related proceeds. These investigations have resulted in the

arrest and conviction of criminal defendants and the seizure of firearms and narcotics. I have previously been the affiant for many federal search warrants and have assisted other state and local agencies, as well as Assistant United States Attorneys, in the preparation of affidavits for search warrants.

6.     I have participated in the execution of many search warrants relative to investigations of Title 18 and Title 21 of the United States Code. Evidence seized pursuant to those search warrants included but were not limited to: firearms, ammunition, controlled substances, drug proceeds, cellular telephones, and computers; documents and records pertaining to the manufacture, possession, and distribution of controlled substances; and proceeds derived from the sale of controlled substances. Further, I have conducted and participated in several firearms investigations that have involved illegal firearm possessors and traffickers using cellular phones to communicate about illegal firearms transactions and related activities.

### FACTS SUPPORTING PROBABLE CAUSE TO SEARCH

7.     According to law enforcement records, in 2009, HALLO was convicted in the State of Michigan with felony Breaking and Entering a Vehicle (with damage to vehicle), which is punishable by more than one year in prison. Law enforcement records also state that, in 2013, HALLO was convicted in the State of Michigan with Home Invasion- 2nd Degree, also punishable by more than one year in prison.

8.      In February 2022, a confidential informant ("CI")[1] told investigators that HALLO had invited CI to buy firearm conversion devices that HALLO claimed were from Benton Harbor.

---

[1] CI worked with law enforcement for approximately three years, during which time CI's information was corroborated in significant respects in connection with multiple investigations. While CI worked as an informant, CI was never discovered to have lied to law enforcement, or to have provided information that was later discredited. The information CI provided in other cases led to numerous successful search warrant executions involving the seizure of drugs, weapons, and other illegal items. CI has worked for financial compensation, and has prior convictions for possession of marijuana (2017), reckless use of a firearm (2018), possession of a controlled substance (2019), and possession of a firearm in a vehicle (2022). CI was also paid for the information and the operational activity related to HALLO. After CI's activities described in this Continuation, CI was arrested for an unrelated domestic violence incident and was deactivated as an informant. CI was on State of Michigan probation at the time of the domestic violence incident. Other than violating the terms of CI's probation agreement, and according to the information available to me, CI never otherwise violated an agreement with law enforcement.

9.      A conversion device, commonly known as a "switch," is a small assembly of parts that can be installed on a semi-automatic pistol to cause it to fire fully automatically with a single pull of the trigger. According to 26 U.S.C. § 5845(b), "the term 'machinegun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." The same provision adds that "machinegun" also means "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." Under this definition, a switch itself is a "machinegun," even if it is not attached to a firearm. *See United States v. Dodson*, 519 F. App'x 344, 347–349 (6th Cir. 2013).

10.     ATF is not aware of any switches having been produced before May 19, 1986. As a result, switches are governed by the Gun Control Act, 18 U.S.C. § 922(o), which prohibits the transfer or possession of a machinegun manufactured after May 19, 1986. Such machineguns may be lawfully possessed only by appropriately licensed people who have paid a required Special Occupational Tax and are authorized by the United States or a statutorily recognized subpart. At all times relevant to this Continuation, HALLO was not a licensee with the appropriate authorization

10.     On March 1, 2022, CI provided ATF with a video that CI said HALLO had sent, depicting a Glock pistol with an affixed switch.

11.     Around that same time, CI told ATF that HALLO sent two voice messages to CI through Snapchat, in which HALLO provided further information about switches he was offering to sell CI. CI sent the voice messages to ATF for review. Below is a transcription of a portion of one voice message from March 1, 2022:

> **HALLO:**
> My mans calling him right now. Shit, to see how many he got. They come from, um, Benton Harbor. They, they drove out here from Benton Harbor. I met them the other day soon as they brought my mans his first couple ones.

12.     Below is a transcription of a portion of another voice message from HALLO about switches that CI shared with investigators on March 1, 2022:

> **HALLO:**   They come from Benton Harbor, though, so it's a drive for them, so, like, basically when the package get in, they going to call my boy, my boy gone call me, and then we gone go from there.

14. HALLO also conducted two separate illegal sales of firearms to CI:

    a. On March 26, 2022, CI informed ATF that CI received a Snapchat message to his cell phone from HALLO. The message depicted a rifle stating "1200 comes with armor piercing rounds." ATF instructed CI to set up a purchase for the rifle for March 29. CI informed ATF that CI's only way of communicating with HALLO is through the Snapchat smartphone application.

    b. On March 29, 2022, HALLO met with CI and an undercover officer ("UC") at the Butterworth Party Store located at 944 Butterworth Street SW in Grand Rapids, MI. HALLO sold an Anderson Manufacturing, model AM-15, multi-caliber rifle in exchange for $1,200. Immediately following the deal, CI told ATF that HALLO messaged CI through Snapchat and stated that he (HALLO) thought someone was following him. At that time, investigators were following HALLO, and saw that HALLO was driving in a car. Because he was in a car at the time, investigators believe HALLO sent the message using the Snapchat smartphone application.

    c. On May 9, 2022, HALLO met with CI, who was under surveillance by investigators, at the Family Dollar located at 2114 Division Ave S. in Grand Rapids, MI. HALLO sold a Glock, model 30, .45 caliber pistol in exchange for $850.

19. In May 2022, investigators instructed CI to contact HALLO regarding any firearms HALLO had for sale. The CI allowed investigators to see the CI's cell phone Snapchat messages with HALLO. In the messages, HALLO said he had a Glock pistol available and that the pistol was "hot," which, based on my training and experience, I understand to mean "stolen." CI understood HALLO communicated through his cell phone (using Snapchat) because HALLO would send CI messages while HALLO was traveling to and from their meetings.

20. Days later, working with federal investigators and under their supervision, the CI bought a Glock pistol from HALLO for $850 during an ATF controlled purchase. Before the transaction, investigators confirmed CI did not have any contraband, and then watched CI meet with HALLO. CI confirmed that CI bought the pistol from HALLO.

25. On December 14, 2022 a criminal complaint was filed against HALLO and others as part of a multi-defendant, multi-jurisdictional investigation relating to the illegal possession of firearms by convicted felons, possession/manufacturing/distribution of machine guns (switches) in the Western District of Michigan. The complaint charged HALLO with violating 18 U.S.C. § 922(g)(1) [felon in possession of a firearm] based, in part, on some of the events described above.

26.     On the same date, in connection with the complaint, U.S. Magistrate Judge Ray Kent issued a federal arrest warrant for HALLO.

27.     On December 15, 2022, HALLO was arrested in Port Canaveral, Florida, on his federal arrest warrant. During his arrest, the Target Device was seized from his person. While in a holding cell, HALLO attempted to destroy the Target Device by slamming it onto a table. the Target Device's screen was shattered, but it appears to still power on.

28.     On January 10, 2023, a grand jury returned a Superseding Indictment in this district in Case No. 1:22-cr-137, which named HALLO and others as defendants. The indictment charges HALLO with two counts of felon in possession of a firearm with respect to the firearms described above in paragraphs 14(b), (c).

29.     Based on my training and experience, participation in numerous firearm and narcotics investigations, I know:

   a.     People who illegally distribute firearms typically use cellphones in connection with their firearm dealing activities, including to plan, execute, and coordinate their purchases and sales. Accordingly, cellphones used by people who illegally distribute firearms frequently contain evidence of firearm trafficking. Such evidence may include communications regarding firearm deals; photographs or videos of currency, firearms, or coconspirators; audio or video files reflecting or concerning firearm transactions; lists of contacts who are involved in firearm crimes; and internet activity regarding firearm transactions.

   b.     Cellphones often create and maintain data showing the phone's location at particular points in time, which can serve as evidence of the phone's user's role in firearm crimes. Location data may take different forms, including GPS data; Internet Protocol addresses the phone has connected to; and "check-in" data from phone applications like Yelp, Facebook, and others.

   c.     Cellphones may be used to access social media websites or applications like Facebook, Instagram, and Snapchat, and people who illegally distribute firearms often use social media to communicate with suppliers and customers. As such, illegal firearms dealers often use cellphones to arrange and execute their transactions.

   d.     People with cellphones use them to communicate about all manner of subjects, including their own state of mind and knowledge. People who use cellphones often succumb to the illusion that their phone use is private, which encourages them to make candid communications that can be used as evidence of their illegal conduct.

   e.     Illegal firearms transactions are primarily conducted in cash. For this reason, people who illegally sell firearms frequently have significant quantities of cash in

their possession. Transactions for controlled substances may also be conducted using payment applications that can be accessed using cellular phones, such as banking apps, Venmo, PayPal, Cash App, Apple Cash, Zelle, and the like.

      f.      Those involved illegal firearms distribution often possess firearms to protect themselves, their wares, and the proceeds of their firearms dealing. Such people also often post on social media about their firearms.

      g.      Cellphones have the ability to store data for long periods of time, including message logs and media files. In some cases, even deleted files can be recovered from a cellphone using forensic tools and software.

## CONCLUSION

Based on the foregoing, I respectfully request the Court to issue the proposed search warrant. Furthermore, because the government will execute this warrant by reviewing the contents of the Target Device, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.